

**ORDERED in the Southern District of Florida on September 14, 2023.**

**Mindy A. Mora, Judge**
**United States Bankruptcy Court**

---

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No.: 21-16989-BKC-MAM |
| National Financial Holdings, Inc, | Chapter 7 |
| Debtor(s). | |
| _____/ | |
| Deborah C Menotte, | Adv. Proc. No.: 22-01243-MAM |
| Plaintiff(s), | |
| v. | |
| Gregory Keough, et al, | |
| Defendant(s). | |
| _____/ | |

### MEMORANDUM OPINION AND ORDER DETERMINING STATUS OF CLAIMS AND LITIGATION

Constitutional rights are important and inviolable. The question underlying this Opinion and Order is whether Gregory Keough ("Keough") and NFH Partners, LLC ("NFH Partners") may leverage their constitutional right to a jury trial into an

immediate pass to litigate the entirety of this Adversary Proceeding in the district court. The answer is almost certainly no, but that question is not for this Court to decide. What this Court can and will do is provide the district court with a thoughtful assessment of the core versus non-core nature of the relevant counts of the Amended Complaint (ECF No. 46) filed by Deborah Menotte ("Trustee").

## PROCEDURAL HISTORY AND BACKGROUND

A. General Background

Debtor National Financial Holdings, Inc. ("NFH") filed a voluntary chapter 11 case on July 17, 2021. A few months later, the case converted to chapter 7, and Trustee was appointed as the chapter 7 trustee for the estate. About one year later, Trustee filed this Adversary Proceeding.

Trustee's Amended Complaint alleges 15 counts against Keough, NFH Partners, Derek Acree ("Acree"), NFH Investments, and three entities affiliated with NFH: NFH Arizona, LLC, NFH Florida, LLC, and Finova Financial, LLC (collectively, the "NFH Affiliates"). The claims are as follows:

| Count | Claim | Defendants |
|-------|-------|------------|
| I | Substantive consolidation | NFH Affiliates |
| II | Breach of fiduciary duty | Keough |
| III | Breach of fiduciary duty | Acree |
| IV | Fraudulent Transfer - §544[1] & Fla. Stat. § 726.105(1)(b) | Keough |
| V | Fraudulent Transfer - §544 & Fla. Stat. § 726.106(1) | Keough |
| VI | Fraudulent Transfer - §548 | Keough |

---

[1] References to section numbers are to provisions of the Bankruptcy Code, title 11 of the United States Code, unless otherwise indicated.

| VII | Recovery of Avoided Transfer - §550 | Keough |
| VIII | Unjust enrichment | Keough |
| IX | Fraudulent Transfer - §544 & Fla. Stat. § 726.105(1)(b) | Acree |
| X | Fraudulent Transfer - §544 & Fla. Stat. § 726.106(1) | Acree |
| XI | Fraudulent Transfer - §548 | Acree |
| XII | Recovery of Avoided Transfer - §550 | Acree |
| XIII | Unjust enrichment | Acree |
| XIV | Injunctive and other equitable relief | Keough and NFH Partners |
| XV | Injunctive and other equitable relief | Acree and NFH Investments |

Acree is currently serving a 41-month prison term for fraud and is no longer an active defendant in this Adversary Proceeding. That status eliminates the need for analysis in this Opinion of counts III, IX, X, XI, XII, XIII, and XV. The NFH Affiliates do not have counsel, which means that no party is presently defending count I[2] and analysis of that count is also unnecessary.

This Opinion and Order addresses the remaining counts (II, IV, V, VI, VII, VIII, and XIV) against Keough and NFH Partners (collectively, the "Keough Defendants"). Only the Keough Defendants moved to withdraw the reference and for a determination as to the core/non-core nature of the counts asserted against them in the Amended Complaint.

---

[2] Count I seeks substantive consolidation of Debtor and the NFH Affiliates. Trustee "stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted" as of the petition date of the bankruptcy case. *O'Halloran v. First Union Nat. Bank of Fla.*, 350 F.3d 1197, 1202 (11th Cir. 2003). Therefore, Trustee controls Debtor, and as plaintiff is not seeking affirmative relief against Debtor in count I, but rather only against the NFH Affiliates.

B. <u>Motion to Withdraw the Reference</u>

The Keough Defendants filed their first motion to withdraw the reference (ECF No. 39) (the "<u>First Withdrawal Motion</u>") on November 12, 2022. Based upon other events transpiring in the main bankruptcy case and this Adversary Proceeding, the Court scheduled an initial hearing upon the First Withdrawal Motion on February 15, 2023.

At that hearing, the Court requested additional briefing from the parties. The Court entered an order (ECF No. 113) ("<u>Briefing Order</u>") memorializing the briefing schedule. Prior to that hearing and entry of the Briefing Order, however, the Keough Defendants filed a renewed motion to withdraw the reference (ECF No. 102) (the "<u>Renewed Withdrawal Motion</u>") asserting identical arguments to those previously posed in the First Withdrawal Motion. As of the date of this Opinion, both the First Withdrawal Motion and the Renewed Withdrawal Motion remain pending.

C. <u>Motion to Determine Core/Non-Core</u>

Concurrently with the First Withdrawal Motion, the Keough Defendants filed a motion (ECF No. 40) (the "<u>First Core/Non-Core Motion</u>") to determine the core/non-core status of the counts asserted in this Adversary Proceeding. The Court addressed the First Core/Non-Core Motion at the same hearing on February 15, 2023 and ordered the parties to submit briefing on the same schedule as for the First Withdrawal Motion. As with the motions relating to withdrawal, the Keough Defendants filed a renewed motion to determine core/non-core status (ECF No. 103) (the "<u>Renewed Core/Non-Core Motion</u>") prior to the February 15, 2023 hearing and

entry of the Briefing Order. Both the First Core/Non-Core Motion and the Renewed Core/Non-Core Motion remain pending.

D. Procedural Clarifications

The Keough Defendants seek to withdraw the reference of this Adversary Proceeding to the district court. The bifurcation of the request into two separate motions is logical because the district court, not this Court, must rule upon the First Withdrawal Motion and the Renewed Withdrawal Motion. That being said, the presentation of four separate motions upon virtually the same issues of fact and law is admittedly confusing.

This Opinion addresses all relevant legal issues but rules upon only those matters properly before the Court. That means that this Opinion explains the bases of the request for withdrawal and provides a recommendation as to the merits of that request, but only rules upon the core versus non-core aspects of certain counts of the Amended Complaint. In other words, this Opinion only provides a ruling on the First Core/Non-Core Motion and the Renewed Core/Non-Core Motion.

Before beginning its analysis, the Court clarifies that although this Opinion only addresses the counts against the Keough Defendants, the same analysis would apply to the counts asserted against the Acree Defendants, if that analysis needed to occur. This Opinion does not address count I as none of the defendants named in that count have sought a determination regarding the core/non-core nature of count I, nor have those defendants sought withdrawal of the reference for count I.

## LEGAL STANDARD

Section 1334(a) of title 28 provides district (not bankruptcy) courts with "original and exclusive" jurisdiction of all cases under the Bankruptcy Code. Section 1334(b) further grants the district courts "original but not exclusive" jurisdiction of all civil proceedings arising under the Bankruptcy Code, arising in the Bankruptcy Code, or related to cases under the Bankruptcy Code.[3]

Those two short provisions with their slight differences create an unusual problem. From a statutory interpretation viewpoint, a request to litigate a contested bankruptcy matter in district court is entirely reasonable. But bankruptcy courts exist for a reason.

A. <u>Bankruptcy Courts and Cases</u>

The primary impetus for an independent bankruptcy court system is the volume of case and adversary proceeding filings. For perspective, the bankruptcy courts in this district processed 10,279 new bankruptcy case filings and 393 adversary proceeding filings in the twelve-month period ending August 31, 2023. That figure does not include pending cases and proceedings that span more than one year, which often occurs in complex matters. As of August 31, 2023, there were 21,393 pending bankruptcy cases and adversary proceedings in this district. With so many cases and proceedings arising under the Bankruptcy Code, a specialized court system to manage these cases promotes the smooth operation of all federal courts.

---

[3] District courts have non-exclusive jurisdiction over adversary proceedings because some lawsuits filed in bankruptcy court are most appropriately heard by a state (not federal) court. This Opinion does not discuss the principles that enable transfer to state court (abstention and remand).

Another driver is the level of expertise required to handle bankruptcy issues promptly. Through countless years of exposure to thousands of cases, bankruptcy judges and court staff have developed exceptional proficiency in handling high-volume dockets involving a specialized area of law. Their institutional knowledge ensures rapid processing of complex bankruptcy matters. In a situation where a person or business is in daily financial distress, efficiency matters a great deal.

B. <u>Adversary Proceedings</u>

In the Southern District of Florida, Local Rule 87.2 refers all bankruptcy cases and adversary proceedings to the bankruptcy court. This means that adversary proceedings begin in the bankruptcy court. The status of bankruptcy courts as Article I (rather than Article III) courts, however, inspires some litigants to seek trial in the district court. The stated reasons vary, but most motions to withdraw the reference focus upon a request for a jury trial.[4]

This Court's standard order setting a scheduling conference ("<u>Scheduling Order</u>") in an adversary proceeding anticipates this circumstance and streamlines the process of moving bankruptcy litigation along as expeditiously as possible. The Scheduling Order requires defendants seeking trial in district court to submit an affirmative statement of "non-consent" to bankruptcy court jurisdiction within a specified deadline that occurs close in time to service of the summons. A defendant's failure to do so results in a determination of consent to the bankruptcy court's

---

[4] Bankruptcy courts may conduct jury trials upon consent of all litigants.

adjudication of the claims in the complaint through final judgment, and the adversary proceeding automatically continues in the bankruptcy court. *See* ECF No. 3, ¶¶ 2 & 3.

Litigants who do not consent to entry of final judgment by the bankruptcy court must also file a motion to withdraw the reference in the district court within the timeframe provided by the Scheduling Order and applicable rules.[5] Prior to ruling upon a motion to withdraw, district courts often seek assistance from the bankruptcy court in the form of a ruling upon the "core" or "non-core" nature of the counts asserted in the adversary complaint.

C.  Determination of Withdrawal

Because bankruptcy courts usually conduct bench trials,[6] it is relatively common for a litigant to request a jury trial as a basis for removal. This strategy often does not pan out as litigants envision. *Dunn v. Ricci,* Case No. 22-cv-21928-BLOOM, 2022 WL 3154187, at *2-3 (S.D. Fla. Aug. 5, 2022).

In recent years, district courts have generally decided that withdrawal of the reference is appropriate only if the following three criteria are met: 1) the subject matter of the litigation is not within the "core" jurisdiction of the bankruptcy court, 2) procedural considerations support removal (typically, this means a party has made

---

[5] *See id.* and Local Bankruptcy Rule 5011-1. Parties often forget that the district court, not the bankruptcy court, rules upon a request for withdrawal of the reference. *See, e.g., First-Citizens Bank & Trust Co. v. Parker Medical Holding Co. (In re Parker Medical Holding Co.),* Adv. Proc. No. 22-05010-JWC, 2023 WL 2749715, at *6 (Bankr. N.D. Ga. Mar. 31, 2023) (describing failure to request withdrawal directly to district court). That being said, it is appropriate to provide the bankruptcy court with notice of the request, as the district court may require a determination from the bankruptcy court as to whether the matter is core or non-core. 28 U.S.C. § 157(b).

[6] It is possible for a bankruptcy court to conduct a jury trial, but this is exceptionally rare. 28 U.S.C. § 157(e).

8

a jury trial demand), and 3) the bankruptcy court has already heard and decided all pretrial matters. *Id.*; *Stower v. Cornide*, Case No. 23-cv-20143-BLOOM, 2023 WL 1100454, at *4-5 (S.D. Fla. Jan 30, 2023).

The Court will address the above criteria with particular emphasis upon the core/non-core determination because that is the most complex portion of the analysis.

### 1. Core/Non-Core Analysis

In the Southern District of Florida, bankruptcy courts provide the initial assessment of "core" status. *Dunn*, 2022 WL 3154187, at *2. As with most issues that relate to bankruptcy jurisdiction, the consideration of whether a matter is core or non-core is not nearly as straightforward as one might hope.

Section 157(b)(2) sets forth a non-exclusive list of core proceedings. The statutory list uses generic phrases and concepts, which means that the actual counts described in a complaint may or may not fall within the ambit of the statute.

To determine whether a complaint count is core or non-core, the bankruptcy court begins its analysis with 28 U.S.C. § 157(b)(2) ("§ 157(b)(2)"), which lists 16 categories of core matters. Those categories are:

> (A) matters concerning the administration of the estate;
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
> (C) counterclaims by the estate against persons filing claims against the estate;
> (D) orders in respect to obtaining credit;
> (E) orders to turn over property of the estate;
> (F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

This is where the analysis gets tricky. The language of § 157(b)(2) is broad and the list of categories is long. Virtually every issue raised in an adversary proceeding impacts the administration of the bankruptcy estate on some level. Broad application of § 157(b)(2)(A) would result in all claims being designated "core", regardless of how attenuated their impact might be. Broad application of § 157(b)(2)(O) ("adjustment of the debtor-creditor or equity security holder relationship") would have a similar impact. And, of course, there is an enormous body of case law acknowledging that § 157(b)(2)'s list of categories is not exhaustive. *See, e.g., Whiting-Turner Contracting Co. v. Elec. Mach. Enters. (In re Elec. Mach. Enters.),* 479 F.3d 791, 797 (11th Cir. 2007). Core jurisdiction can exceed the parameters of § 157(b)(2), assuming the right set of facts and law.

Over time, courts have developed practical guidelines that extend beyond the plain language of § 157(b)(2). A proceeding is "core" if it involves a right created by

federal bankruptcy law or would arise only in bankruptcy. *In re Providence Fin. Invs.,*
*Inc.,* 593 B.R. 884, 891 (Bankr. S.D. Fla. 2018). A proceeding is non-core if it does not
invoke a substantive right created by the federal bankruptcy law and is one that could
exist outside of bankruptcy. *Elec. Mach.*, 479 F.3d at 797. Because causes of action
may be pled in multiple ways, bankruptcy courts have the freedom to look beyond the
window-dressing of a complaint and investigate a claim's true substance. *Chambers
v. Park Square Enters. (In re J.E.L. Dev., Inc.),* 646 B.R. 338, 346 (Bankr. M.D. Fla.
2022).

In the end, bankruptcy courts exercise broad discretion to determine the true
nature of the asserted claims because they are the courts "in the trenches" of the
entire bankruptcy case. Unlike the district court, the bankruptcy court has in-depth,
first-hand knowledge of how an adversary proceeding relates to and impacts the
progress of a main bankruptcy case. Bankruptcy courts are also uniquely poised to
see past the veneer of vague claims and assess the true nature of the underlying
dispute, such as an objection to claim that essentially restates an action for a breach
of contract and lien foreclosure. *J.E.L. Dev.,* 646 B.R. at 346.

2. <u>Jury Trial Demand/ Consideration of Pretrial Matters</u>

Entitlement to a jury trial alone is generally insufficient for withdrawal of the
reference at the early stages of an adversary proceeding. *Stower,* 2023 WL 1100454,
at *4-5; *Dunn*, 2022 WL 3154187, at *2-3. Even when courts in this district have
elected to withdraw the reference, they typically do so after the bankruptcy court has
considered all pre-trial matters, including any dispositive motions. *Id.* Thus, although

11

entitlement to a jury trial is one aspect that the district court will consider when analyzing a request for withdrawal, it is not determinative, at least as to all pretrial matters. *Id.*

D. <u>Withdrawal of Fraudulent Transfer Claims</u>

Withdrawal questions relating to fraudulent transfer claims asserted under § 548 are particularly tricky because of typical pleading practices. If a party asserts a fraudulent transfer claim under § 548, then they will almost always assert a "companion" fraudulent transfer claim for the same acts or omissions under § 544 (which incorporates state fraudulent transfer law).[7] So, although § 548 does not include reference to state law and might be viewed as core under 28 U.S.C. 157(b)(2)(H) and existing case law, the factual underpinnings of § 548 claims usually rest upon allegations that pertain equally to non-core claims under state law as incorporated by § 544. In other words, the statutory origin of a § 548 claim as a "pure" bankruptcy law claim does little to change a typical § 548 claim's status as a mirror image of a non-core claim. *Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.),* 702 F.3d 553, 571 (9th Cir. 2012) (fraudulent transfer claim under applicable state law was "essentially identical" to § 548 claim).

The net result is that § 548 claims often fall into a murky category of causes of action that are statutorily "core" but perhaps more properly suited for district court adjudication. *Exec. Benefits Ins. Agency v. Arkison,* 573 U.S. 25, 34, 37-38 (2014);

---

[7] Because a § 544 claim could exist under state law, that would indicate that it is non-core. A proceeding is non-core if it does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy. *Elec. Mach.*, 479 F.3d at 797.

*Martin v. Kaplan (In re SpinLabel Techs., Inc.)*, Adv. Proc. No. 19-01295-EPK, 2020 WL 4805475, at *4 (Bankr. S.D. Fla. Feb. 6, 2020). That same logic could extend to causes of action that travel hand-in-hand with § 548 claims, like claims under § 550 for recovery of the funds asserted as fraudulently transferred pursuant to § 548 and § 544. *C.f. Providence Fin.*, 593 B.R. at 892 (discussing § 542 turnover claim).

The overlapping status of similar fraudulent transfer claims under two different sources of law (federal and state), plus the potential for the recovery of proceeds under federal law, leads to practical concerns. From an efficiency standpoint as well as the perspective of ensuring consistent results, it makes no sense for the district court to fully adjudicate fraudulent transfer claims tied to state law while the bankruptcy court performs the exact same analysis for the recovery of the same type of claims that arise only under federal law. *SpinLabel,* 2020 WL 4805475, at *4.

So, clearly, deeper issues are at play than simply the origin of the law for fraudulent transfer claims or even their designation as statutorily core or noncore under 28 U.S.C. § 157. That's where *Stern v. Marshall*, 564 U.S. 462 (2011) and its progeny, including *Executive Benefits,* come in.

E.  *Stern* Concerns

The Supreme Court's issuance of *Stern v. Marshall* in 2011 was a watershed moment in the bankruptcy world. Building upon prior precedent, the Supreme Court concluded that the bankruptcy court lacked "constitutional authority to enter a final judgment on a state law counterclaim that [was] not resolved in the process of ruling on a creditor's proof of claim." 564 U.S. at 503. That pronouncement signaled a clear

limitation upon bankruptcy court authority to adjudicate both core and non-core claims. The ripple effects continue to be felt today.

Since *Stern*, bankruptcy and district courts have grappled with 28 U.S.C. § 157(b) and constitutional issues, while at the same time unwinding the complex mixture of facts and legal assertions typical of fraudulent transfer claims. Inevitably, identical and integral background facts will support the assertion of core, non-core, and *Stern* claims. Knee-deep in the analysis of issues raised via motion practice in the main bankruptcy case, the bankruptcy court is the natural forum to handle adversary proceeding litigation.

And yet, constitutional rights trump efficiency. They remain inviolable. When litigants file a motion to withdraw the reference, district courts must sort out whether some or all counts of an adversary complaint must be withdrawn as a constitutional matter, while weighing core versus non-core distinctions that are arguably meaningless post-*Stern*.

Consent provides the clearest indication as to whether a bankruptcy court should move forward with the adjudication of a fraudulent transfer claim. When consent is conspicuously absent, however, the path is less clear. *Stern* and *Executive Benefits* provide the answer for situations where the affected party is unequivocally not a creditor.[8] Collectively, those cases hold that a non-creditor's assertion of a claim or defense without consent to final adjudication by a bankruptcy court will override

---

[8] An earlier Supreme Court case, *Katchen v. Landy*, 382 U.S. 323 (1966), clarified that the act of filing a proof of claim indicated consent to bankruptcy court adjudication of any preference claims asserted against the claimant.

the "core" status of a cause of action described in § 157(b) because constitutional concerns mandate trial in the district court. 564 U.S. at 503; 573 U.S. at 37.

The problem lies when the facts of a given case do not mesh well with existing case law. What *Stern* and *Executive Benefits* do not expressly state becomes a gaping hole of uncertainty. What should a trial court do when the claims are not readily discernible as *Stern* claims? The most reasonable approach is to presume withdrawal of the reference to permit a jury trial after the conclusion of all pretrial matters. 573 U.S. at 37 (affirming bankruptcy court grant of summary judgment while assuming without deciding that fraudulent conveyance claims were *Stern* claims); *SpinLabel,* 2020 WL 4805475, at *4.

## ANALYSIS

The Amended Complaint alleges 15 counts. Only the Keough Defendants have moved to withdraw the reference. The chart below describes the source of law for each count asserted against the Keough Defendants.

| Count | Claim | Basis |
|-------|-------|-------|
| II | Breach of fiduciary duty | State law |
| IV | § 544 & Fla Stat. § 726.105(1)(b) | State law (as incorporated by Bankruptcy Code) |
| V | §544 & Fla. Stat. § 726.106(1) | State law (as incorporated by Bankruptcy Code) |
| VI | § 548 | Bankruptcy Code |
| VII | § 550 | Bankruptcy Code |
| VIII | Unjust enrichment | State law |
| XIV | Injunctive and other equitable relief | Not stated (cites to procedural rules but not substantive law) |

The factual allegations supporting all counts are thoroughly intertwined. To summarize as succinctly as possible, the Amended Complaint alleges that Keough and Acree worked in tandem to funnel vast sums of money (some of which was allegedly obtained through fraudulent PPP and EIDL loans) through NFH and affiliated entities. The ultimate beneficiaries of this arrangement were Keough, Acree, their families, and associates.

Counts VI and VII are fraudulent transfer and recovery claims arising under the Bankruptcy Code. Despite this status, counts VI and VII fall into the nebulous category of causes of action that are statutorily "core" but for which intervening constitutional concerns weigh in support of district court trial adjudication.[9] *Exec. Benefits,* 573 U.S. at 34. Although the ultimate determination rests with the district court, this Court anticipates (without stating any particular preference) that litigation of those counts will proceed in this Court through entry of orders on dispositive motions, but move to the district court for the requested jury trial.

Counts IV and V are also fraudulent conveyance claims based on state law as incorporated by § 544. To address those counts, a court must consider the identical set of facts and circumstances underlying its analysis of counts VI and VII under § 548 and § 550. For this reason, the Court anticipates and would also recommend (without stating any particular preference) that litigation of counts IV and V proceed along with counts VI and VII.

---

[9] Based upon this conclusion, the Court declines to parse issues of setoff and alter ego raised in ECF No. 131.

Counts II and VIII are based in state law and could exist outside the bankruptcy process. Determination of those counts, however, will require an assessment of the same facts and circumstances surrounding counts IV, V, VI, and VII.[10] Likewise, assessment of count XIV will require identical factual analysis.

While the district court could elect to immediately remove some but not all counts, doing so would likely be a waste of judicial resources as it would result in two courts simultaneously assessing the same facts. The potential for inconsistent results and *Stern* concerns weigh in favor of maintaining one consolidated proceeding.

## CONCLUSION

This Court perceives that the most expeditious and efficient path to trial is for this Adversary Proceeding to remain in this Court through the conclusion of all pretrial matters, including consideration of the pending motion to dismiss (ECF No. 66) and motion for summary judgment (ECF No. 68). That question, however, is not for this Court to determine, as the district court must rule upon the First Withdrawal Motion and Renewed Withdrawal Motion.

After having reviewed all pertinent motions, responses, replies, and supplements to the First Withdrawal Motion, Renewed Withdrawal Motion, First Core/Non-Core Motion, and the Renewed Core/Non-Core Motion, the Court hereby **ORDERS** that:

---

[10] The Court's consideration of count I will also involve consideration of the same factual allegations, particularly as they relate to piercing the corporate veil and theories of alter ego.

1.      The First Core/Non-Core Motion and the Renewed Core/Non-Core Motion are GRANTED as set forth herein.

2.      Counts VI and VII are core matters under 28 U.S.C. § 157(b)(2)(A), (H), and (O) that nonetheless should be treated as non-core matters to facilitate the efficient resolution of this Adversary Proceeding.

3.      Counts II, IV, V, VIII, and XIV are non-core matters that should be that should be litigated with counts VI and VII.

4.      To avoid inconsistent results, all counts of the Adversary Proceeding should be litigated concurrently in the same court.

5.      The Court will treat this entire Adversary Proceeding as a non-core matter under 28 U.S.C. § 157(c) pending further order from the district court.

6.      The Court will take no action upon the pending motion to dismiss [ECF No. 66) and motion for summary judgment [ECF No. 68] until such time as the district court rules upon the First Withdrawal Motion and Renewed Withdrawal Motion.

7.      This Adversary Proceeding is ABATED pending ruling by the district court on the First Withdrawal Motion and Renewed Withdrawal Motion.

8.      The Clerk of Court is DIRECTED to transmit a copy of this Opinion to the district court.

###

Copy furnished to:

Brett Lieberman, Esq.

*Attorney Lieberman is directed to serve this Order upon all interested parties in compliance with all applicable rules.*